IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| DONALD HOWARD HINELY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 5:12-CV-346 (MTT) |
| ) | |
| ) | |
| GEORGIA DEPARTMENT OF ) | |
| CORRECTIONS, SHARON LEWIS, M.D., ) | |
| and IKE AKUWANNE, M.D., ) | |
| ) | |
| Defendants. ) | |
| ) | |

## ORDER

Before the Court is the Plaintiff's Motion for Temporary and Permanent Injunctive Relief. (Doc. 4). Neither party requested a hearing. For the following reasons, the Motion is **DENIED**.

### I. FACTUAL BACKGROUND

The Plaintiff sued the Defendants on August 24, 2012, pursuant to 42 U.S.C. § 1983, alleging deliberate indifference to his medical needs in violation of the Eighth Amendment. (Doc. 1). Specifically, the Plaintiff alleges he has been diagnosed with Hepatitis C and the Defendants have not provided him with medically necessary treatment. He seeks damages for pain and suffering he has experienced as a result of the Defendants' alleged indifference to his condition. He also seeks temporary and permanent injunctive relief, moving this Court to order the Defendants to diagnose and treat his Hepatitis C. (Doc. 4). In their response in opposition to the Plaintiff's Motion,

the Defendants have submitted several hundred pages of the Plaintiff's medical records as well as affidavits from Defendant Akuwanne and Ayaz Chaudhary, M.D., a gastroenterology and hepatology consultant for Georgia Correctional HealthCare. (Docs. 8-12, 8-18).

## II.  DISCUSSION

To obtain preliminary injunctive relief, the Plaintiff must prove (1) there is substantial likelihood of success on the merits; (2) the injunction is necessary to prevent irreparable injury; (3) the threatened injury outweighs the harm the injunction would cause the Defendants; and (4) the injunction would not be adverse to the public interest. *Keeton v. Anderson-Wiley*, 664 F.3d 865, 868 (11th Cir. 2011).  A preliminary injunction is inappropriate here because the Plaintiff has thus far not shown he is substantially likely to succeed on the merits of his case.[1]

The Eighth Amendment prohibits cruel and unusual punishment, including deliberate indifference to serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  To show deliberate indifference, a prisoner must meet three requirements:  he must satisfy an objective component by showing a serious medical need; he must satisfy a subjective component by showing that prison officials acted with deliberate indifference to this need; and he must show the officials' wrongful conduct caused his injury.  *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007).  The subjective component requires a plaintiff to further prove officials' "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross]

---

[1] Because the Plaintiff fails to satisfy the first prong of this test, the Court does not analyze the remaining three prongs, nor does the Court address the additional requirements for a permanent injunction.

negligence." *Id.* at 1327 (quoting *Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2005)).  In determining "gross negligence," where the case turns on a delay in providing medical care, courts have considered the seriousness of the medical need, whether the delay worsened the medical condition, and the reason for the delay.  *Id.*  Additionally, a prisoner cannot establish a violation simply because he "may have desired different modes of treatment" than that which was provided to him.  *Hamm v. DeKalb County*, 774 F.2d 1567, 1576 (11th Cir. 1985).  Such course of treatment claims involve the "exercise of professional judgment" and are not actionable as Constitutional torts.  *See Estelle*, 429 U.S. at 105 n.10.  Neither does "a simple difference in medical opinion" constitute deliberate indifference.  *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989).

The Plaintiff was diagnosed with Hepatitis C virus on February 17, 2010, according to his medical records and the parties' affidavits.  (Doc. 1-1 at 7; Doc. 8-10 at 16-19; Doc. 8-18, ¶ 20).  The Plaintiff contends that the Defendants have been deliberately indifferent to his medical needs because they have not treated his infection for the past three years.  In support of his claim, the Plaintiff submits an affidavit from William S. Thompson, M.D.,[2] an emergency medicine physician who has reviewed the Plaintiff's medical records.  Based on this review, Dr. Thompson states that the Plaintiff's Hepatitis viral load is abnormally high and that no antiviral medication was administered to treat the infection between the date of the Plaintiff's diagnosis and

---

[2] The Defendants dispute Dr. Thompson's ability to provide expert opinion in this case.  At this time, the Court does not rule on the Dr. Thompson's qualifications as an expert or the admissibility of his testimony as expert opinion.  Rather, the Court has given Dr. Thompson's Declaration full consideration in addressing the Plaintiff's motion for injunctive relief.

January 17, 2012, when he was prescribed antipsychotic medications. (Doc. 1-1 at 7). Dr. Thompson concludes the Plaintiff's physical and mental states "appear[]" to be worsening because his Hepatitis C is not being treated. (Doc. 1-1 at 7). Without treatment, the Plaintiff "is likely to develop complete liver failure." (Doc. 1-1 at 8).

The Defendants acknowledge that the Plaintiff has been diagnosed with Hepatitis C. On April 12, 2010, Dr. Chaudhary saw the Plaintiff for further consultation following his diagnosis and ordered lab work to identify the virus's genotype. (Doc. 8-18, ¶¶ 20-21). Test results reported on April 16, 2010 indicated the Plaintiff had Hepatitis C genotype 1b. (Doc. 8-18, ¶ 22; Doc. 8-8 at 6-8). Based on this genotype, doctors on June 16, 2011, recommended the Plaintiff receive a liver biopsy to further evaluate for treatment. (Doc. 8-18, ¶¶ 19, 23; Doc. 8-9 at 28). It is not specifically clear to the Court why more than a year passed between the genotyping and the biopsy recommendation. However, at some point doctors concluded the symptoms the Plaintiff has complained of since 2009 – inability to eat, seizures, vomiting, weight loss, passing out, and feeling weak – are not necessarily consistent with Hepatitis C and, in the Plaintiff's case, indicate some other unresolved serious illness. (Doc. 8-18, ¶¶ 24-25; Doc. 8-9 at 28; Doc. 8-10 at 13). Thus, they have worked to resolve these unrelated symptoms prior to conducting a liver biopsy. (Doc. 8-18, ¶ 24; Doc. 8-9 at 28; Doc. 8-10 at 13). Indeed, from June 2009 through August 2012, the Plaintiff has received close to 30 different medication prescriptions, plus prescribed nutritional drink and multivitamins. (Doc. 8-12, ¶ 10). He has also undergone several medical tests, procedures, and consultations during this time. (Doc. 8-12, ¶¶ 11-12; Doc. 8-14; Doc. 8-15).

Defendant Akuwanne, medical director at Baldwin State Prison, first encountered the Plaintiff on May 1, 2012, following the Plaintiff's April 6, 2012, transfer to Baldwin State Prison. (Doc. 8-12, ¶¶ 2, 13, 18). After examining the Plaintiff and discussing his medical history with him, Dr. Akuwanne suspected the Plaintiff's symptoms resulted from a neuroendocrine tumor. Dr. Akuwanne then requested a gastrointestinal consult. (Doc. 8-12, ¶¶ 20-21, 24; Doc. 8-1 at 7). Dr. Chaudhary provided this consultation on July 26, 2012, recommending for the Plaintiff a Celiac serology, a Chromagranin test, and a duodenal biopsy. (Doc. 8-12, ¶ 25; Doc. 8-3 at 14). The Celiac serology indicated no presence of Celiac disease. (Doc. 8-12, ¶ 26; Doc. 8-2 at 26). The Chromogranin test, which is used to identify a range of neuroendocrine tumors or Celiac disease, revealed levels that were out of range. (Doc. 8-12, ¶ 27 & n.8; Doc. 8-11 at 23). The duodenal biopsy is scheduled to be performed before December 31, 2012. (Doc. 8-12, ¶ 28).

There is no doubt that Hepatitis C is an objectively serious medical condition that requires treatment. *See Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004). And it is clear that various prison officials, including Defendant Akuwanne, possessed subjective knowledge of the Plaintiff's condition. However, the Plaintiff at this time seems unlikely to prove that the Defendants are intentionally disregarding the harm the infection poses or that they are "grossly negligent" by not currently treating the Plaintiff's Hepatitis C. The Defendants recognize that the Plaintiff is afflicted with Hepatitis C. However, in their professional judgment, they claim to have decided to postpone treatment until they can determine the underlying cause of the Plaintiff's symptoms. Moreover, Dr. Chaudhary believes that to provide antiviral treatment to the Plaintiff for

Hepatitis C without first resolving his unrelated illness could actually worsen his condition. (Doc. 8-18, ¶ 26). Given that the Plaintiff is currently scheduled for a duodenal biopsy at Dr. Chaudhary's recommendation, the Defendants are obviously continuing to treat the Plaintiff and are continuing their search for the true source of his symptoms.

Dr. Thompson's conclusion that the Plaintiff will ultimately develop complete liver failure if his Hepatitis C is not treated may be valid. However, Dr. Thompson does not state that this harm is imminent. Nor does he causally connect the Plaintiff's general symptoms to Hepatitis C with particular specificity, stating only that "without treatment … it *appears* that his physical and mental states are worsening." (Doc. 1-1 at 7) (emphasis added). And, perhaps most significantly, Dr. Thompson does not address the possibility that treating the Plaintiff's Hepatitis C could compound the Plaintiff's problems if that treatment is contraindicative to an as-yet undiagnosed condition. At most, Dr. Thompson's declaration suggests there is professional disagreement over the best course of treatment for the Plaintiff. The Plaintiff may disagree with the course that prison doctors have chosen, but he is not likely to succeed on his deliberate indifference claim based purely on this disagreement. Were the Defendants allowing the Plaintiff's Hepatitis C to go untreated and not simultaneously pursuing another source for his symptoms, the request for injunctive relief might reach a different outcome. And if, in the future, the Defendants stop searching for this source and do not start to treat the Plaintiff's Hepatitis C, an injunction may become appropriate. However, at this time, the Court will not second guess the professional judgment of the Defendants' medical doctors.

## III. CONCLUSION

Given that the Plaintiff is unlikely to prove the Defendants are acting with more than gross negligence by not treating his Hepatitis C, it is not currently appropriate for the Court to order such treatment. Therefore, the Plaintiff's Motion for Temporary and Permanent Injunctive Relief (Doc. 4) is **DENIED**.

Although the Plaintiff is not entitled to injunctive relief at this time, the Court does not suggest the Plaintiff ultimately will not prevail. The Defendants' assurances seem plausible, but the Plaintiff's medical records raise some concerns. Accordingly, the Court **ORDERS** the Defendants to periodically provide the Court and the Plaintiff's counsel with updated medical records. The first update should be submitted to the Plaintiff's counsel and via e-mail to Courtroom Deputy Teri Hatcher, teri_hatcher@gamd.uscourts.gov, within seven days of the entry of this Order. Defendants shall then provide updated records every 30 days until otherwise instructed.

**SO ORDERED**, this 2nd day of November, 2012.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT