**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | |
|---|---|
| **DONALD HOWARD HINELY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )     **CIVIL ACTION NO. 5:12-CV-346 (MTT)** |
| | ) |
| | ) |
| **GEORGIA DEPARTMENT OF** | ) |
| **CORRECTIONS, SHARON LEWIS, M.D.,** | ) |
| **and IKE AKUNWANNE, M.D.,** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

## ORDER

This is a 42 U.S.C. § 1983 lawsuit by a prisoner who alleges his Eighth

Amendment rights were violated.  Specifically, the Plaintiff claims he was diagnosed

with hepatitis C while in state custody and that the Defendants[1] were deliberately

indifferent to his medical needs.  Before the Court are the Defendants' motions for

summary judgment (Doc. 27) and for sanctions (Doc. 29) against the Plaintiff and his

attorney.  For the following reasons, the motion for summary judgment is **GRANTED**,

and the motion for sanctions is **GRANTED in part** and **DENIED in part**.

---

[1] Defendant Sharon Lewis, M.D., is medical director for Defendant Georgia Department of Corrections (DOC).  Her duties include administrative oversight of the DOC's clinical programs. Defendant Ike Akunwanne, M.D., is medical director at Baldwin State Prison where the Plaintiff was incarcerated beginning in April 2012.  He treated the Plaintiff and is responsible for providing medical care to inmates there.  (Doc. 1; Doc. 11).  As for the DOC, it is an arm of the state, and the Eleventh Amendment bars this action against it regardless of the nature of relief sought by the Plaintiff.  *Stevens v. Gay*, 864 F.2d 113, 115 (11th Cir. 1989) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)).  In any event, even if the Plaintiff could seek injunctive relief from the DOC, his request would be denied for the reasons discussed below.

## I.  FACTUAL BACKGROUND

The Plaintiff has been incarcerated in DOC facilities since 2001.  According to allegations in his complaint, he started feeling sick in 2009.  Since then he has complained of ongoing symptoms of weight loss, inability to eat, vomiting, passing out, sweats, shakes, seizure-like spells, and severe stomach pain.  (Doc. 1, ¶ 6).  The Plaintiff was diagnosed with hepatitis C in February 2010.[2]  (Doc. 8-10 at 16-19).  Although various tests and treatments related to his symptoms have preceded and followed his diagnosis, the Plaintiff alleges he has not been provided antiviral medications to treat his hepatitis C.  (Doc. 1, ¶ 10).

In April 2012, the Plaintiff was transferred to Baldwin State Prison.  (Doc. 27-2, ¶ 5; Doc. 32, ¶ 5).  There he encountered Dr. Akunwanne, who he met for the first time in a May 1, 2012 physical exam.  During the exam they discussed the Plaintiff's medical history and treatment options.  (Doc. 27-2, ¶¶ 13-14; Doc. 27-13, ¶ 6; Doc. 32, ¶¶ 13-14).  Based on the exam and his review of the records, Dr. Akunwanne was concerned the Plaintiff possibly had a neuroendocrine tumor.  (Doc. 27-2, ¶¶ 15-16; Doc. 27-13, ¶ 9; Doc. 32, ¶¶ 15-16).  If that were the case, it would be contraindicative to treat his hepatitis.  (Doc. 27-13, ¶ 8).  Accordingly, Dr. Akunwanne ordered a consultation with Dr. Ayaz Chaudhary, a DOC consultant in the area of gastroenterology and hepatology

---

[2] Hepatitis C is a virus that, over a period of years, causes the patient's liver to become inflamed.  Because the disease is complex, DOC medical professionals rely on department protocol and policy to guide the treatment they provide.  (Doc. 27-2, ¶¶ 25-26; Doc. 32, ¶¶ 25-26).  This protocol calls for inmates diagnosed with hepatitis C to have their liver enzymes tested.  If they continually have abnormal elevations, further testing is initiated to determine if they have an acute or chronic infection.  (Doc. 27-2, ¶¶ 27-29; Doc. 32, ¶¶ 27-29).  Inmates may receive antiviral treatment if they meet the clinical criteria.  Some may qualify for a liver biopsy if they have hepatitis C genotype 1.  (Doc. 27-2, ¶¶ 32-34; Doc. 32, ¶¶ 32-34).

who previously had been involved in the Plaintiff's care.  (Doc. 8-18, ¶¶ 4, 20-26; Doc. 27-2, ¶¶ 19-21; Doc. 27-13, ¶ 11; Doc. 32, ¶¶ 19-21).

At the July 26, 2012 consultation, Dr. Chaudhary recommended the Plaintiff receive a celiac serology, chromogranin testing, and a duodenal biopsy.  (Doc. 27-2, ¶ 35; Doc. 27-13, ¶ 12; Doc. 32, ¶ 35).  The Plaintiff's chromogranin levels, measured August 1, were out of range, potentially indicating the presence of neuroendocrine tumors.  (Doc. 27-2, ¶¶ 37-38; Doc. 27-13, ¶¶ 14-15; Doc. 32, ¶¶ 37-38).  According to Dr. Akunwanne and Dr. Chaudhary, the Plaintiff's continued complaints of having seizures, being unable to eat, vomiting, weight loss, passing out, and feeling weak evidenced a serious illness that had to be resolved before the administration of an antiviral treatment for his hepatitis.  (Doc. 8-18, ¶¶ 25-26; Doc. 27-13, ¶ 8).  Dr. Chaudhary believed the Plaintiff's symptoms were unrelated to hepatitis.  (Doc. 8-18, ¶ 28).  The doctors were further concerned that if the Plaintiff's symptoms were unrelated to the infection, the treatment for hepatitis C could endanger him.  (Doc. 8-18, ¶¶ 25-26; Doc. 27-13, ¶ 8).

Notwithstanding the medical attention he was receiving,[3] the Plaintiff filed this lawsuit for damages and injunctive relief in late August 2012, nearly four months after

---

[3] Although he was not prescribed antiviral medication for his hepatitis, between the time he first complained of symptoms in June 2009 and the onset of litigation in August 2012 the Plaintiff received numerous prescription medications for other illnesses as well as prescribed nutritional drinks and multivitamins.  (Doc. 8-12, ¶¶ 10-12; Doc. 27-2, ¶ 1; Doc. 27-13, ¶¶ 53-56; Doc. 32, ¶ 1).  During these three years he was also provided with medical tests, procedures, and consults with specialists to ascertain the medical diagnosis and prognosis for his symptoms.  (Doc. 8-12, ¶¶ 10-12; Doc. 27-2, ¶ 2; Doc. 27-13, ¶¶ 53-56; Doc. 32, ¶ 2).  Doctors, nurses, physician assistants, and nurse practitioners all contributed to his care, and he has received at least eleven special consultations.  (Doc. 8-12, ¶¶ 10-12; Doc. 27-2, ¶ 3; Doc. 27-13, ¶¶ 53-56; Doc. 32, ¶ 3).  Although his weight fluctuated during this time, it has remained within a 20 pound range.  (Doc. 27-2, ¶ 4; Doc. 8-12, ¶ 8; Doc. 32, ¶ 4).

Dr. Akunwanne first saw him.  He alleges that Dr. Akunwanne and Dr. Lewis, who has never treated the Plaintiff, were deliberately indifferent to his hepatitis infection.  (Doc. 1).  Still, the Plaintiff continued to receive treatment after initiating this action.  On October 11, 2012, he underwent the duodenal biopsy that Dr. Chaudhary had recommended.  Results were normal, and for the next two months doctors and nurses continued to examine, test, and treat the Plaintiff for various complaints.  (Doc. 27-2, ¶¶ 51-57; Doc. 27-13, ¶¶ 19-25; Doc. 32, ¶¶ 51-57).  Because the Plaintiff was receiving regular medical care and doctors were continuing to search for the cause of his underlying symptoms, the Court denied the Plaintiff's motion for a permanent injunction in November 2012.  However, the Court ordered the Defendants to provide monthly updates on the Plaintiff's course of treatment.  (Doc. 12).

At the end of December 2012, the Plaintiff saw Dr. Chaudhary again.  Dr. Chaudhary recommended, based on results of the testing and biopsy, that the Plaintiff have a colonoscopy.  (Doc. 27-2, ¶ 58; Doc. 27-13, ¶ 26; Doc. 32, ¶ 58).  The colonoscopy was scheduled for February 2013, but the Plaintiff later refused it.  (Doc. 27-2, ¶ 59; Doc. 27-13, ¶ 27; Doc. 32, ¶ 59).  Dr. Akunwanne saw the Plaintiff on February 28, 2013 and advised him refusal of the test could delay his hepatitis treatment, which was on hold pending a negative result from his colonoscopy.  (Doc. 27-2, ¶ 60; Doc. 27-13, ¶ 28; Doc. 32, ¶ 60).

The Plaintiff met with Dr. Akunwanne again on March 26, 2013 and indicated he wished to proceed with the colonoscopy.  However, he refused Dr. Akunwanne's suggestion that he be admitted to the infirmary for observation of his symptoms.  (Doc. 27-2, ¶ 63; Doc. 27-13, ¶ 31; Doc. 32, ¶ 63).  The Plaintiff continued to see medical staff

in April and May for other complaints and because he was not taking his medication. (Doc. 27-2, ¶¶ 64-67; Doc. 27-13, ¶¶ 32-35; Doc. 32, ¶¶ 64-67).  A colonoscopy was performed on June 27, 2013.  Results were normal.  (Doc. 27-2, ¶ 68; Doc. 27-13, ¶ 36; Doc. 32, ¶ 68).  Between July 2013 and October 2013, the Plaintiff visited medical staff on several occasions, underwent numerous tests, and was examined and treated for various symptoms.  (Doc. 27-2, ¶¶ 69-80; Doc. 27-13, ¶¶ 37-48; Doc. 32, ¶¶ 69-80).  On October 1, 2013, Dr. Akunwanne met with the Plaintiff and told him further treatment depended on Dr. Chaudhary's assessment.  (Doc. 27-13, ¶ 48).

On October 10, 2013, the Plaintiff again met with Dr. Chaudhary.  Dr. Chaudhary advised the Plaintiff that treatment for hepatitis might worsen his health status and cause a cardiovascular accident, a heart attack, anemia, or flu-like symptoms, but that treatment was available if he assumed the risk.  (Doc. 27-2, ¶ 81; Doc. 27-13, ¶ 49; Doc. 32, ¶ 81).  Dr. Chaudhary also ordered further chromogranin testing to document stability or progression, a consult for a gastric emptying test, and a consult for a second opinion regarding the Plaintiff's self-reported complaints.  (Doc. 27-2, ¶ 82; Doc. 27-13, ¶ 50; Doc. 32, ¶ 82).  These tests were pending at the time the Defendants filed their summary judgment motion in November 2013.  (Doc. 27-2, ¶¶ 83-84; Doc. 27-13, ¶¶ 51-52; Doc. 32, ¶¶ 83-84).  Out of an abundance of caution, the Court ordered the Defendants to submit for in camera review the Plaintiff's medical records created since then.  Those records, provided to the Court on March 21, 2014, indicate the Plaintiff has continued to receive significant medical care, including a liver biopsy in late February 2014 and another consultation with Dr. Chaudhary scheduled for April 2014.

The Plaintiff does not dispute the facts of his treatment – at least not with specific citations to the record.[4]  Rather, as to those facts he does not expressly admit, the Plaintiff attempts to create a dispute by asserting through broad denials that despite the many tests he has undergone, he has not been treated with any antiviral medications since his hepatitis diagnosis.  (Doc. 32).  This may be true, but it does not create a genuine dispute as to whether the Defendants were deliberately indifferent to the Plaintiff's medical needs.

## II.  DISCUSSION

### A.    Summary judgment standard

The Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A factual dispute is not genuine unless, based on the evidence presented, "a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).  The movant must cite "to particular parts of materials in the record, including depositions,

---

[4] Indeed, the Plaintiff has failed to comply with Local Rule 56.  That rule provides in part that "[a]ll material facts contained in the moving party's statement which are not specifically controverted by specific citation to the record shall be deemed to have been admitted[.]…All documents and other record materials relied upon by a party…opposing a motion for summary judgment shall be clearly identified for the court.  Where possible, dates, specific page numbers, and line numbers shall be given."  This rule protects judicial resources by requiring the parties to organize the evidence rather than placing the burden on the Court.  *Reese v. Herbert*, 527 F.3d 1253, 1268 (11th Cir. 2008).  Thus, failure to comply with the rule permits the Court to ignore uncited evidence the Plaintiff relies on to raise facts contrary to those stated by the Defendants.  But the Defendants must still demonstrate the absence of a genuine dispute and the Court, as it does in this case, must ensure the Defendants meet their burden of production to show they are entitled to judgment as a matter of law.  *Id.*

documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).

The burden then shifts to the non-moving party, who must rebut the movant's showing "by producing…relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  The non-moving party does not satisfy its burden "if the rebuttal evidence is merely colorable, or is not significantly probative of a disputed fact."  *Id.* (quoting *Anderson*, 477 U.S. at 249-50). However, "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. … The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor."  *Anderson*, 477 U.S. at 255.

### B.    Summary judgment analysis

The Eighth Amendment prohibits cruel and unusual punishment, including deliberate indifference to a prisoner's serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  To show deliberate indifference, a prisoner must: (1) satisfy an objective component by showing a serious medical need; (2) satisfy a subjective component by showing that prison officials acted with deliberate indifference to this need; and (3) show the officials' wrongful conduct caused his injury.  *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007) (citations omitted).  The subjective component requires a plaintiff to further prove officials' "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross]

negligence." *Id.* at 1327 (quoting *Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2005)).

In determining "gross negligence" where the case turns on a delay in providing medical care, courts have considered the seriousness of the medical need, whether the delay worsened the medical condition, and the reason for the delay. *Id.* To succeed on such a claim, a plaintiff "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994), *overruled on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 (2002). The prisoner cannot establish a violation simply because he "may have desired different modes of treatment" than that which was provided to him. *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1576 (11th Cir. 1985). Such course of treatment claims involve the "exercise of professional judgment" and are not actionable as Constitutional torts. *See Estelle*, 429 U.S. at 105 n.10. Neither does "a simple difference in medical opinion" constitute deliberate indifference. *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989).

Hepatitis C is an objectively serious medical condition that requires treatment. *See Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004). And it is obvious that various prison officials, including Dr. Akunwanne, knew the Plaintiff had been diagnosed with hepatitis C. However, there is no evidence the Defendants intentionally disregarded the harm the infection poses or that they have been "grossly negligent" in their treatment of the Plaintiff. On the contrary, the record shows the Defendants have postponed a certain treatment for a specific condition until they could determine the underlying cause of the Plaintiff's overall symptoms. Moreover, Dr. Chaudhary and Dr.

Akunwanne believed that providing antiviral treatment to the Plaintiff for hepatitis C without first resolving his unrelated ailments could actually worsen his health.

Clearly, the DOC physicians were exercising their professional judgment in postponing treatment of the Plaintiff's hepatitis while searching for other sources of his symptoms.  They have provided an abundance of medical care to the Plaintiff both before and after he filed suit, and certainly since May 2012 when Dr. Akunwanne began treating the Plaintiff.  This is not a case where the Plaintiff's hepatitis has been ignored, deliberately or otherwise.  Rather, it is a case where the Defendants have assessed the Plaintiff's hepatitis in the context of his overall health and have pursued a specific course of treatment that takes into account many factors, not just his infection.

In response, the Plaintiff has offered only the declaration of Dr. William S. Thompson, an emergency room physician who has not treated the Plaintiff but has reviewed some of his medical records.[5]  Dr. Thompson does not identify all of the records he reviewed.  But based on facts recited in his declaration, there is no indication that he reviewed records of the Plaintiff's treatment by Dr. Akunwanne, who first saw the Plaintiff in May 2012.  In his declaration, Dr. Thompson states that the Plaintiff's hepatitis viral load was abnormally high and that no antiviral medication was administered between the Plaintiff's 2010 diagnosis and January 17, 2012.  (Doc. 1-1 at 7).  Dr. Thompson concludes that the Plaintiff's physical and mental states "appear[]" to be worsening because his hepatitis C is not being treated.  (Doc. 1-1 at 7).  "There is a

---

[5] The Defendants dispute Dr. Thompson's qualifications to provide expert opinion in this case and have moved to exclude his declaration.  (Doc. 26).  Because the Defendants are entitled to summary judgment even taking into account Dr. Thompson's opinion, the Court does not rule on its admissibility and the Defendants' motion is **DENIED as moot**.  The Court addresses Dr. Thompson's opinion here merely for the sake of argument.

deliberate indifference to his medical condition and there is an absence of medical diligence which is negligent and does not meet the standard of care," he observes. (Doc. 1-1 at 7-8).  But Dr. Thompson makes no mention of the Plaintiff's symptoms unrelated to hepatitis C and the efforts by the DOC physicians to determine the cause of those symptoms.  Thus, Dr. Thompson does not address whether treatment of the Plaintiff's hepatitis C might be inappropriate depending on the cause of the Plaintiff's other unrelated symptoms.  At most, Dr. Thompson's opinion, based on circumstances that existed at some point in early 2012, suggests a professional disagreement with unidentified DOC doctors, but not with Dr. Akunwanne.

As for Dr. Lewis, there is no indication she was involved in the Plaintiff's care. Indeed, she provides no direct patient care.  (Doc. 27-2, ¶ 92; Doc. 32, ¶ 92).  Nor has she received any correspondence regarding the Plaintiff.[6]  (Doc. 27-14, ¶ 10).  Because she cannot be vicariously liable for the conduct of her subordinates, the Plaintiff must show an affirmative link between her actions and the deprivation of his rights.  That is, he must show she personally participated in the alleged unconstitutional conduct or that her actions caused the deprivation because (1) she did nothing in the face of a history of widespread abuse, (2) her policy resulted in deliberate indifference to constitutional rights, or (3) she directed her subordinates to act unlawfully.  *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003).  In his response to the Defendants' motion for

---

[6] The Plaintiff has alleged otherwise, attaching to his complaint three letters his counsel wrote on his behalf in November and December 2011 requesting that he receive "emergency treatment" for his hepatitis C.  (Doc. 1-1 at 2-4).  At the bottom of the letters, which are addressed to the wardens of the prisons where the Plaintiff was then incarcerated, Dr. Lewis is listed among the parties who supposedly were to receive copies of the correspondence.  There is no other indication or evidence the letters were actually sent to or received by her.

summary judgment, the Plaintiff makes no mention of Dr. Lewis and makes no argument in support of his claim against her.

Further, although the Plaintiff alleged in his complaint the DOC has a policy of "limiting treatment for inmates who have hepatitis C," he has offered no evidence to support this.  (Doc. 1, ¶ 13).  Dr. Lewis "emphatically denies" the existence of any such custom or policy.  (Doc. 27-14, ¶ 6).  The DOC's written policy for treatment of hepatitis C is based on a patient's desire for treatment and ability to meet certain medical criteria. (Doc. 27-14, ¶ 6; Doc. 27-12).  Among the general exclusion criteria are "[c]ontraindications to many of the medications used" or "[u]ncontrolled or unstable chronic medical conditions."  (Doc. 27-12 at 4).  The Plaintiff has not offered evidence that these are medically unsound criteria or that they are used to limit treatment for punitive purposes in violation of the Eighth Amendment.

Because the Plaintiff cannot show there is a genuine dispute that the Defendants deliberately disregarded a serious risk to his health, he cannot show that he is entitled to damages or injunctive relief.  Accordingly, the Defendants' motion for summary judgment must be granted.

## C.    Sanctions

The Defendants ask for sanctions against the Plaintiff and his attorney pursuant to Fed. R. Civ. P. 11 and 28 U.S.C. § 1927.[7]  The Defendants contend they are entitled

---

[7] The Plaintiff's counsel did not timely respond to the Defendants' motion for sanctions, which the Defendants served him with October 22, 2013 prior to filing it in Court.  (Doc. 29).  On February 28, 2014, the Plaintiff filed a motion for an out of time response to the Defendants' request for sanctions after the Court ordered the Defendants to itemize the costs and fees they were seeking.  (Doc. 35).  In his motion, the Plaintiff primarily revisited arguments he made in response to the Defendants' motion for summary judgment.  It was not until March 14, 2014 that

to $11,340 for 60 hours of work by their counsel on summary judgment and *Daubert*

motions plus an additional $1,500 because the Plaintiff's counsel engaged in "vexatious

litigation." (Doc. 36; Doc. 36-1; Doc. 36-2). The Court finds that counsel for the Plaintiff

violated Rule 11 when he refused to dismiss the complaint once it became apparent

from the evidence in the record that the named Defendants were not deliberately

indifferent to the Plaintiff's medical needs. Put another way, by the fall of 2013 the

Plaintiff's attorney had no evidence that Dr. Akunwanne and Dr. Lewis were deliberately

indifferent to the Plaintiff's medical needs.

When an attorney files a motion or pleading, he certifies to the Court that, to the

best of his knowledge and after a reasonable inquiry,

> [1] the claims, defenses, and other legal contentions are warranted by
> existing law or by a nonfrivolous argument for extending, modifying, or
> reversing existing law or for establishing new law; [and]
> [2] the factual contentions have evidentiary support or, if specifically so
> identified, will likely have evidentiary support after a reasonable
> opportunity for further investigation or discovery….

Fed. R. Civ. P. 11(b)(2)-(3). Whether an attorney has violated these requirements

depends on "[1] whether the legal claims or factual contentions are objectively frivolous,

and…[2] whether a reasonably competent attorney should have known they were

frivolous." *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 665 (11th Cir. 2010)

(citing *Worldwide Primates, Inc. v. McGreal,* 87 F.3d 1252, 1254 (11th Cir. 1996)). If

there is a violation, the Court may impose sanctions. Fed. R. Civ. P. 11(c)(1).

In this case, the Defendants contend the Plaintiff and his attorney continued to

assert claims against them that were objectively frivolous in light of facts they would

---

the Plaintiff's counsel sought to more fully rebut the Defendants' sanctions argument. (Doc. 37).
Even then, his arguments were unpersuasive.

have discovered through a proper pre-suit investigation or that were later made known to them during the course of litigation.  (Doc. 29-1 at 10).  They cite the Plaintiff's allegation of deliberate indifference as to treatment, medications, and weight loss in the face of evidence clearly showing the Plaintiff has received an abundance of medical treatment since his hepatitis diagnosis.  The Defendants also note that Dr. Thompson only reviewed a portion of the Plaintiff's file and that a proper pre-suit investigation would require review of the Plaintiff's entire file.

However, what the Court finds troubling is not the initiation of this lawsuit but the fact that the Plaintiff's counsel did not dismiss the deliberate indifference claims before November 11, 2013 when dispositive motions were due.  By then it was clear that his legal and factual contentions were not supported by the evidence and were objectively frivolous.  *See RelationServe Media, Inc.*, 610 F.3d at 665 ("A legal claim is frivolous if no reasonably competent attorney could conclude that it has any 'reasonable chance of success' or is a reasonable argument to change existing law….A factual claim is frivolous if no reasonably competent attorney could conclude that it has a reasonable evidentiary basis." (quoting *Worldwide Primates*, 87 F.3d at 1254)).  The Defendants' evidence clearly established the Plaintiff was and had been receiving continual medical care and that the nature of his symptoms precluded treatment of his hepatitis infection.  No reasonably competent attorney could conclude that the Defendants violated the Plaintiff's Eighth Amendment rights when they did not treat him for this reason.  Thus, his claims became frivolous by the time dispositive motions were due.

In his tardy responses to the motion for sanctions, counsel for the Plaintiff notes that the Court ordered the Defendants to submit updated medical records every month.

Counsel suggests this demonstrates the Court's concern with the Defendants' conduct. It is true that based upon the allegations of the complaint, the Court was concerned and for that reason did order the Defendants to periodically provide the Plaintiff's medical records. But month after month, these records demonstrated the Defendants were not deliberately indifferent to the Plaintiff's medical needs, and the frivolity of the Plaintiff's claims became increasingly clear with each submission.

Because the Plaintiff's complaint became objectively frivolous, the Court must ask whether the Plaintiff's counsel should have known his claims were without foundation. This depends on "what was known or reasonably knowable when the paper was 'present[ed] to the court.'" *RelationServe Media, Inc.*, 610 F.3d at 665 (quoting Fed. R. Civ. P. 11(b)). As suggested above, the Court would not expect the Plaintiff's counsel to recognize the frivolity of the Plaintiff's claims prior to filing suit, particularly given the difficulties of investigating the allegations of a prison inmate. However, once the Defendants produced the Plaintiff's medical records and other evidence, the Plaintiff's counsel should have suspected his client's claims were without merit.

Certainly, by November 2013, it was incumbent upon the Plaintiff's counsel to dismiss this action rather than burden the Defendants and this Court with the task of filing and adjudicating a summary judgment motion. At that point, counsel had sufficient notice that he was treading on thin ice. On October 22 and October 23, 2013, the Defendants provided to the Plaintiff's counsel, by facsimile and certified mail, copies of their motion for sanctions and a letter disclosing their intent to file the motion. (Doc. 38-1; Doc. 38-2). In doing so, the Defendants complied with Rule 11's safe harbor provision. *See* Fed. R. Civ. P. 11(c)(2). Moreover, the day before that, October 21, the

Court by text order granted the Defendants' request for a 21 day extension to move for summary judgment based in part on their expressed intent to file a Rule 11 motion.  The Defendants did not actually move for sanctions until more than a month later, November 25, 2013.  (Doc. 29).

The Plaintiff's counsel at first denied any knowledge of the Defendants' motion for sanctions and claimed he never received a safe harbor notice.  (Docs. 35; 37). Then, as the Court was finalizing this order, and after the Defendants presented evidence that they had provided notice of their intent to seek sanctions, the Plaintiff's attorney filed a "Reply to Defendant's Response to Plaintiff's Assertation of Defendants' Failure to Provide Good Faith Letter."  (Doc. 39).  Now, the Plaintiff's lawyer admits he received the notice and asserts that because of the Defendants' "voluminous filings," he simply overlooked the motion for sanctions on the docket.  (Doc. 37 at 1-2).  He blames this oversight on short staffing and a busy trial calendar.  Finally, the Plaintiff's lawyer announces he is ready to dismiss this action because he has received the medical records the Court requested and discovered the Plaintiff has received a pre-treatment biopsy.

This filing, if anything, further illustrates why sanctions are appropriate. Counsel's willingness to dismiss his client's claims now that "the remedy has…been achieved" entirely misses the point.  (Doc. 39 at 3).  That DOC physicians are now pursuing a plan satisfactory to the Plaintiff's counsel is not evidence of the Defendants' previous indifference to his well-being.  By the fall of 2013, the evidence conclusively showed Dr. Akunwanne and other DOC physicians were constantly evaluating the Plaintiff's condition to determine if and when it was appropriate to treat his hepatitis.

There was no indication at that point that any physician was deliberately indifferent to the Plaintiff's medical needs.  In the face of this evidence, if the Plaintiff's attorney truly believed that Dr. Akunwanne (or, somehow, Dr. Lewis[8]) was deliberately indifferent in the care he provided, the Plaintiff needed to at least produce some evidence, e.g., an expert opinion, explaining how and why Dr. Akunwanne's treatment rose to the level of a constitutional violation.  His response to the Defendants' motion for summary judgment made no attempt to do this.

Accordingly, the Court finds that the Plaintiff violated Rule 11.  Any sanction imposed must be limited to that which will deter repetition of the conduct.  Fed. R. Civ. P. 11(c)(4).  Moreover, "even in the face of a blatant Rule 11 violation, a district court retains discretion to decide how to sanction the party or even not to impose sanctions at all."  *RelationServe Media, Inc.*, 610 F.3d at 666.  In this case, the Court does not believe the Plaintiff's attorney acted in bad faith.  The Court also recognizes the difficulties he faces in representing incarcerated parties and appreciates the role counsel plays in representing those parties who, from a litigation standpoint, are inherently disadvantaged in trying to assert their constitutional and civil rights.  The Court does not wish to chill such lawsuits when they have some reasonable merit.  But this case is now without merit, and while counsel should be a zealous advocate for his clients, he must not allow himself to play a part in perpetuating the significant amount of frivolous litigation that originates in the state's prison system.  Therefore, with respect to

---

[8] The handling of the claim against Dr. Lewis by itself warrants sanction.  In responding to the Defendants' summary judgment motion, the Plaintiff makes no effort to support his claim against her.

Rule 11, the Defendants' motion for sanctions is granted, and counsel for the Plaintiff is sanctioned in the amount of $250.00.

As to 28 U.S.C. § 1927, "[a]ny attorney…who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. To justify § 1927 sanctions, "(1) the attorney must engage in unreasonable and vexatious conduct, (2) that conduct must have multiplied the proceedings, and (3) the amount of sanctions must bear a financial nexus to the excess proceedings." *Barnhart v. Lamar Adver. Co.*, 523 F. App'x 635, 638 (11th Cir. 2013) (citing *Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997)). An attorney's conduct is vexatious and unreasonable when it is "so egregious that it is tantamount to bad faith." *Id.* (citation omitted). This requires more than negligence; the attorney must "knowingly or recklessly pursue[] a frivolous claim." *Id.* (citation omitted). As the Court stated previously, it does not find that the Plaintiff's counsel acted in bad faith. Accordingly, to the extent the Defendants seek sanctions pursuant to § 1927, their motion is denied.

### III. CONCLUSION

For the foregoing reasons, the Defendants' motion for summary judgment (Doc. 27) is **GRANTED**. Their motion for sanctions (Doc. 29) is **GRANTED as to Rule 11** and **DENIED as to 28 U.S.C. § 1927**. Sanctions against the Plaintiff's counsel are assessed in the amount of **$250.00** as a penalty payable to the Court pursuant to Fed. R. Civ. P. 11(c)(4).

**SO ORDERED**, this 1st day of April, 2014.

<u>S/ Marc T. Treadwell</u>
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT